```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
PATRICIA MCFARLAND,
                       Plaintiff,              08-CV-6160T

v.                                             DECISION
                                               and ORDER
MICHAEL ASTRUE,
Commissioner of Social Security,

                       Defendant.
_____
```

## INTRODUCTION

Plaintiff, Patricia McFarland("McFarland") filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("Disability"), and Supplemental Security Insurance ("SSI"). On October 7, 2008, the Commissioner moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and on November 10, 2008, plaintiff cross-moved for judgment on the pleadings.

For the reasons that follow, I find that substantial evidence supports the decision of the ALJ. Accordingly, plaintiff's motion for judgment on the pleadings is denied and defendant's motion for judgment on the pleadings is granted.

BACKGROUND

Plaintiff is a 52 year old woman with an eleventh grade education. (Tr. 74, 85) She alleges that she has been disabled since July 9, 2004 because of carpal tunnel syndrome and cervical and lower back pain. On January 25, 2005, McFarland filed an application for Disability and SSI. (Tr. 74-76) Her application was denied initially on April 5, 2005. (Tr. 57-60) Plaintiff requested a hearing which was held on August 14, 2007 at which plaintiff appeared before an Administrative Law Judge ("ALJ") and was represented by counsel and a vocational expert appeared and testified. (Tr. 352-388) By decision dated August 30, 2007, the ALJ found MacFarland was not disabled. (Tr. 14-25) Plaintiff requested review by the Appeals Council. The decision of the ALJ became final when the Appeals Council denied review on August 30, 2007. (Tr. 14-25) Plaintiff commenced this action on April 8, 2008 claiming that she was disabled by bilateral carpal tunnel syndrome, cervical and lower back pain and shoulder injury.

A.  Medical Background

Plaintiff began experiencing tingling and numbness in her hands in 1987. (Tr. 204) On July 23, 2002, plaintiff sought treatment from Dr. David Mitten, an orthopedic surgeon, for bilateral hand numbness that she had since 1987. (Tr. 168) Dr. Mitten noted that given the duration of symptoms, physical exam, and nerve conduction studies, he recommended bilateral

carpal tunnel releases. (Tr. 168) The release surgery resolved the numbness and tingling in the hands but plaintiff continued to complain of pain and that she had a tendency to drop things. (Tr. 204-5)

MacFarland injured her back twisting at work on April 17, 2003. She developed low back pain which would radiate to both buttocks and to groin areas. (Tr. 205) She was treated with physical therapy and by a chiropractor for stiff neck and upper back. (Tr. 204)

MacFarland began physical therapy at the McKenzie Institute, Lumbar Spine Assessment on September 20, 2004 for symptoms of lower back pain shooting into the groin and a left elbow that felt weak. (Tr. 112) She continued regular therapy through January 25, 2005. (Tr. 114-118)

Plaintiff complained to her family physician, Dr. Paul Rapoza, of recurrent back pain on January 22, 2004. An MRI of plaintiff's lumbar spine of February 12, 2004 indicated mild degenerative disc disease at L5-S1 level and superimposed disc herniation/extrusion which extended "slightly upwards along the dorsal lower aspect of the L5." (Tr. 119) However, the disc herniation "caused only a minimal impression on the ventral margins of the thecal sac" and there was no evidence of

3

significant posterior disc herniation, spinal canal stenosis or foraminal narrowing. (Tr. 147)

Dr. Bakos examined plaintiff in August, 2004 and concluded that plaintiff did not have surgically correctable disc disease. She was taking Vioxx for carpal tunnel syndrome which also helped the back pain. (Tr. 175) It was noted that MacFarland did not fill the prescription for Vicodin which was prescribed for back pain. (Tr. 176)

Dr. Richard DellaPorta examined plaintiff on September 1, 2004 during which he found plaintiff to move independently, ambulating with a stiff but otherwise normal gait. (Tr. 119) Dr. DellaPorta noted normal cervical lordosis with tenderness over the cervical spine and no paracervical spasm. MacFarland had full neck flexion, extension and rotation but plaintiff complained of stiffness in her neck. Dr. DellaPorta referred plaintiff to Dr. Patel at the Spine Center and concluded that she had a "moderate partial disability at her low back." (Tr. 120) He instructed plaintiff to not lift more than 20 pounds and only doing so with proper back mechanics. She was directed to refrain from heavy pushing or pulling and from sitting more than two hours without a chance to stand. (Tr. 120)

Dr. Rajeev Patel, an orthopedist at Strong Memorial Hospital, examined plaintiff on September 13, 2004 by referral of Dr. Rapoza. (Tr. 128) Films of the lumbar spine showed no abnormalities and the MRI dated February 12, 2004 showed degenerative disc desiccation at L5-S1 with small central disc herniation at L5-S1. (Tr. 129) Dr. Patel diagnosed low back pain due to a "discogenic etiology with somatic referral". (Tr. 129) He instructed plaintiff to avoid bending, twisting, or lifting greater than 10 pounds and to initiate a lumbar spine stabilization program in extension bias. (Tr. 129) Dr. Patel treated MacFarland with therapeutic lumbar transforaminal epidural space injections twice in November, 2004. Plaintiff testified that they did not succeed in relieving the pain. (Tr. 369)

An independent medical examination was conducted on November 30, 2004 at the direction of the State of New York Worker's Compensation Board for evaluation of bilateral carpal tunnel syndrome. (Tr. 136) Plaintiff had been treated for carpal tunnel syndrome since 1987. It was noted that plaintiff's hands were fine if plaintiff did not engage in repetitive work but she did continue to experience pain when lifting items. (Tr. 137) Dr. Devanny noted that plaintiff also had trapezoid joint

5

osteoarthritis and lower back pain.  He concluded that plaintiff had a "temporary mild disability regarding her bilateral carpal tunnel syndrome and her cervical strain." (Tr. 139)

A motor nerve conduction study performed on October 18, 2004 found no electrodiagnostic evidence of acute or chronic lumbosacral radiculopathy nor peripheral nerve entrapment. (Tr. 191)

Dr. Patel re-evaluated plaintiff on January 24, 2005 for lumbosacral radicular and low-back pain. (Tr. 122-123)  Upon examination, plaintiff was able to heel walk and toe walk without difficulty or pain, lumbar extension was achieved to within normal limits without pain and palpation of the lumbar paraspinal muscles did elicit tenderness.  Plaintiff declined more aggressive treatment options and instead stated that she was relatively functional enough.  Dr. Patel found that she was at maximum medical improvement with a spinal condition of discogenic low back pain and a herniated disk at L5-S1. (Tr. 122) He concluded that plaintiff had a "moderate to marked permanent partial disability" with restrictions of no bending and twisting and lifting no greater than 10 pounds. (Tr. 122) She was directed to continue with home exercise program and use the soft lumbosacral orthosis when needing to lift or bend.

6

An independent medical examination by Dr. DellaPorta was conducted on January 31, 2005. (Tr. 133-134) He found "L5-S1 mild degenerative disk disease, small central disk herniation extending slightly upwards along the dorsal aspect of L5 vertebral body." (Tr. 134) He noted electrodiagnostic studies were normal without evidence for radiculopathy bilaterally. Dr. DellaPorta concluded that plaintiff reached maximum medical improvement and that she had a "mild to moderate permanent partial disability at her low back." (Tr. 134) He opined that plaintiff could perform work which did not involve repetitive bending or twisting of her back, that she should not lift more than 30 pounds and only lifting this weight using proper back mechanics. Plaintiff was also advised to not do any heavy lifting.

Dr. Rapoza completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on February 10, 2005, in which MacFarland was found to be limited in her ability to lift to 10 pounds. (Tr. 141) She was found able to stand or walk six hours in an eight hour workday, but must periodically alternate sitting and standing. (Tr. 142) Dr. Rapoza reported that plaintiff's Carpal Tunnel Syndrome limited her left hand ability

7

to handle, finger or peel and that her low back pain was worsened by vibrations. (Tr. 143)

Plaintiff had an independent medical examination by Dr. Ramon Medalle on March 17, 2005 referred by the Division of Disability Determination. (Tr. 204) At this time, plaintiff reported taking Hydrocodone and Naproxen. (Tr. 206) Dr. Medalle concluded that MacFarland was moderately limited in activities that require repetitive use of both hands because of carpal tunnel syndrome post surgery. (Tr. 208) He also found plaintiff to be moderately limited in activities that require prolonged sitting, standing, repetitive bending, and heavy lifting due to lumbar spine pain. (Tr. 208)

The Physical Residual Functional Capacity Assessment completed for plaintiff found that she could occasionally lift 20 pounds, frequently lift or carry 10 pounds, stand, sit or walk about 6 hours in an 8 hour day. (Tr. 214) In February, 2006, plaintiff was taking Narposyn for low back pain. (Tr. 229) Plaintiff testified that she continued to have difficulty holding small items and lifting items greater than 10 pounds. (Tr. 367)

Plaintiff testified that she could walk about 30 minutes before experiencing back pain and can stand approximately an hour without pain. (Tr. 370)

8

B.  <u>Non-Medical Background</u>

Plaintiff's prior work experience includes work in production and assembly from October 21, 1985 through January 1, 2006.  MacFarland lives with her husband and son. (Tr. 365) Plaintiff reported during a medical exam in March of 2005 that she cooked, cleaned the house, did laundry and shopped for food and clothing. (Tr. 206)

A vocational expert, Peter Manzi, testified at the hearing. (Tr. 378-386) Given the hypothetical of a person the same age, education and work experience as plaintiff with the residual functional capacity to perform a full range of light work who could occasionally handle and finger but no repetitive twisting of the lower trunk, Mr. Manzi stated that she could not perform plaintiff's past work. (Tr. 379) However, Mr. Manzi opined that there are jobs that the person could perform such as counter clerk for a photo finisher, a furniture rental clerk and an investigator of dealer accounts. (Tr. 380) Given a second hypothetical that the individual also has the limitation in occasional crouching, climbing and balancing, Mr. Manzi stated that these positions would still be an option. (Tr. 380) Given the additional limitation that the individual would need five breaks a day, that individual could not perform the jobs

9

suggested. (Tr. 381) If the exertional limitations were for sedentary work, Mr. Manzi suggested that such an individual could be a call-out operator or surveillance system monitor. (Tr. 382)

DISCUSSION

Pursuant to 42 U.S.C.§ 405(g), the factual findings of the Commissioner are conclusive when they are supported by substantial evidence. Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980). A disability is defined as

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the Act unless it is:

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(2)(A), 1383(a)(3)(B). Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

In evaluating disability claims, the Commissioner is required to use the five step process promulgated in 20 C.F.R.

10

§§ 404.1520 and 416.920. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits her ability to work. Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission. If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled. If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform her past work. If she is not, the fifth and final inquiry is whether the claimant can perform any other work. The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner. <u>Bush v. Shalala</u>, 94 F.3d 40, 44-45 (2d Cir. 1996).

Here, the ALJ followed the five step procedure. In his decision dated August 30, 2007, the ALJ found that plaintiff (1) had not engaged in substantial gainful activity since the onset date of July 9, 2004; (2) suffered from carpal tunnel

11

syndrome as well as cervical and low back pain; (3) did not have an impairment that meets or equals one of the listed impairments listed in Appendix 1, subpart P, Regulation No. 4; (4) did not have the residual functional capacity to perform her past relevant work as an assembler, packer and sorter but did have the residual functional capacity to perform light work with the additional limitations of occasional handling, fingering, no repetitive twisting of lower trunk, occasional crouching, balancing and the option to change positions every hour; and (5)there are a significant number of jobs in the national economy that she could perform such as counter clerk in photo refinishing, furniture rental clerk, and an investigator in dealer accounts. (Tr. 17-25)

Plaintiff alleges that the ALJ did not have substantial evidence in the record to support his finding that plaintiff was not disabled. She contends that the ALJ failed to address plaintiff's carpal tunnel syndrome condition and failed to give appropriate weight to the opinion of plaintiff's treating physician, Dr. Rapoza. Further, plaintiff argues that the ALJ failed to properly evaluate plaintiff's credibility regarding her symptoms and the resultant limitations.

I find that there is substantial evidence in the record to support the ALJ's decision. First, plaintiff points to Dr. Rapoza's report in March 2005 in which he stated that he never expected plaintiff to return to gainful employment. (Tr. 210) The opinions of treating sources are entitled to controlling weight if they are well supported and not contradicted. 20 C.F.R. §§ 404.1527 and 416.927. However, the ALJ is not required to give controlling weight to treating physicians' opinions as to whether the claimant is disabled or unable to work. 20 C.F.R. § 404.1527(e)(1) and (3). Here, the ALJ agreed with the treating physicians' as to plaintiff's diagnosis of carpal tunnel syndrome and low back pain. The ALJ relied on the treating physician's opinion as to plaintiff's physical limitations such as her ability to sit, stand, and capacity she could lift as well as repetitive activities. (Tr. 22-24) However, the ALJ did not agree that these conditions prevented her from performing the requirements of work.

The ALJ's conclusion that plaintiff could perform light work with the restrictions of occasional crouching and climbing is consistent with Dr. Rapoza's assessment of plaintiff's abilities. Dr. Patel limited plaintiff in her lifting capacity as well as directed that she avoid twisting, bending and that she alternate

between sitting and standing. (Tr. 122, 129)  Dr. Rapoza concurred with Dr. Patel's restrictions limiting plaintiff's ability to lift to 10 pounds and finding plaintiff able to stand or walk six hours in an eight hour workday with periodic alternate sitting and standing. (Tr. 141-142)

Plaintiff disagrees with the ALJ's finding that plaintiff's testimony regarding the intensity and limiting effects of the symptoms was not credible.  The ALJ's determination that plaintiff's characterization of her limitations was exaggerated is supported by substantial evidence in the record.  The ALJ noted that plaintiff's daily activities included caring for her seven year old son, doing household chores such as laundry, cooking, as well as driving and shopping. He also relied on the medical records of the examining doctors who noted improvement in plaintiff's symptoms with conservative treatment.

Both Dr. Patel and Dr. Rapoza, plaintiff's treating physicians, considered plaintiff to have a "moderate to marked permanent partial disability" with restrictions of no bending and twisting and lifting no greater than 10 pounds. (Tr. 122) Plaintiff was treated conservatively, directed to continue with home exercise program, to use the soft lumbosacral orthosis when needing to lift or bend, and to take medication as needed.  The

MRI revealed mild degenerative disc disease at L5-S1 and a disc herniation causing "only a minimal impression on the ventral margins of the thecal sac". (Tr. 147)  The MRI ruled out significant posterior disc herniation, spinal canal stenosis or foraminal narrowing. (Tr. 147)  The ALJ properly considered plaintiff's daily activities, the location, duration, frequency and intensity of pain, the factors that precipitate or aggravate the symptoms, treatment and medical records in finding plaintiff's claim of total disability to be not credible.

CONCLUSION

I find substantial evidence in the record to support the ALJ's conclusion that plaintiff is not disabled within the meaning of the Social Security Act.  Accordingly, the decision of the Commissioner denying plaintiff's disability claim is affirmed, the plaintiff's motion for summary judgment is denied, the defendant's motion for judgment on the pleadings is granted and the complaint is dismissed.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
     MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         April 8, 2009